AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
MAR 0 6 2020
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

IPHONE, MODEL UNK, SERIAL NUMBER UNK, BELONGING TO RAYMOND BROWN, CURRENTLY LOCATED AT THE RALEIGH PD

Case No. 5:20-mj-1250-JG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Eastern District of North Carolina, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841 | Distribution of Cocaine; Distribution of Crack Cocaine |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the Steve Kopcsak, The affiant appeared before me via reliable electronic means, was placed under oath and attested to the contents of this application.

Date: 6 MARCH 2020

City and state: Raleigh, NC

*Applicant's signature*
Detective Steve Kopcsak
*Printed name and title*

*Judge's signature*
James E. Gates III, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF IPHONE, MODEL UNK, SERIAL NUMBER UNK, BELONGING TO RAYMOND BROWN, CURRENTLY LOCATED AT THE RALEIGH PD | Case No. 5:20-mj-1250-JG |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Steve Kopcsak, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property — that is, electronic devices and media — which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachments A and B.

2. I, Steven Kopcsak, (hereinafter referred to as "this affiant", am a full time Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and a detective with the Raleigh Police Department (RPD). This affiant has been a sworn law enforcement officer for since 2003. During this affiant's years of employment, this affiant has investigated and participated in investigations of adults, juveniles, both suspects and victims of crimes. This affiant's assignments and experience include patrol operations, tactical operations, and criminal investigations in drug related criminal activity, firearms violations, gang activity, person crimes, property

crimes, and juvenile crimes. This affiant has received training through the Raleigh Police Department Training Academy and regularly scheduled in-service training sessions. This affiant has attended advanced narcotics patrol tactics classes and has also received training from other drug investigators in the field of investigation, detection, and identification of illegal controlled substances. Through this affiant's training and experience, I am familiar with persons, practices, and with the appearance, packaging, manufacturing, sales, and distribution of illegal controlled substances. This affiant has been involved in numerous illegal weapons cases, as well as controlled substance investigations on both the federal and state levels.

3. I have conducted several investigations related to federal firearms, and narcotics violations. Through training and experience while working these cases, I have learned that computers, cellular phones, tablets and other electronic storage devices often contain evidence of the alleged crimes. Cellular phone histories often contain evidence related to internet activity, financial transactions, package tracking information, and addresses of where narcotics or money originates or has been shipped. Additionally, cellular telephone SMS (Text) histories often contain conversations between the co-conspirators related to narcotics trafficking, sales or crimes of violence.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter.



## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

The property to be searched includes:

5. One IPhone, Model unknown, Serial Number unknown taken from the possession of Raymond BROWN. The model and serial numbers are unknown at this time due to that information being stored within the phones data and not on the device itself.

6. The applied-for warrant would authorize the forensic examination of the Device as described in Attachment A, for the purpose of identifying electronically stored data as more particularly described in Attachment B.

## PROBABLE CAUSE

7. The United States, including the Federal Bureau of Investigation (FBI) and Raleigh Police Department (RPD), is conducting a criminal investigation of Raymond BROWN aka "031" aka "Boo Boo" regarding federal narcotic violations.

8. Raymond BROWN is the self-proclaimed leader of his own set in the larger blood gang organization, which he refers to as "031 gang" in North Carolina, a wholly illegitimate criminal enterprise. The blood gang is a New York City-based criminal gang, which has leaders and members across the United States. BROWN has been described as one of the higher ranking members of the North Carolina bloods and is believed to hold the rank of 5 star general. Information has been obtained from cooperating sources that BROWN has subordinate gang members that take "orders" from him both inside and outside of jails and prisons. BROWN is known to have ordered subordinate gang members to commit acts of violence that

3

have been subsequently carried out. He is also known to have committed acts of violence himself.

9. Raymond BROWN is a convicted felon. BROWN has previously been convicted of Attempted Common Law Robbery in August of 2003, Conspire to Possess Weapon of Mass Destruction in June of 2005, and Possession with Intent to Sell and Deliver Cocaine twice, in November of 2005 and July of 2006. BROWN was convicted of Robbery with a Dangerous Weapon in February of 2010. While serving a sentence for Robbery, BROWN was convicted of Possessing a Phone/Communication Device by an Inmate and Possession of a Controlled Substance on a Prison or Jail premises in January 2018. BROWN has pending felony drug charges in state court.

10. In November of 2019, RPD and agents of the FBI utilized a cooperating source (CS) to conduct a controlled drug transaction from Raymond BROWN. The CS was prepped and the CS and the CS's vehicle were searched for any illegal contraband with negative results. The CS was supplied with an amount of recorded buy money and outfitted with audio/video recording equipment. During this drug transaction, the CS was required to go through a "middleman" in order to purchase drugs from BROWN. The CS made contact in person with the middleman and requested an amount of crack cocaine, who in turn called his supplier on the phone to request that the supplier deliver the crack cocaine. This phone call, made over speakerphone, was heard by the CS and captured by the audio/video equipment. The middleman advised the CS that he was talking to BROWN who agreed to

4

deliver the crack cocaine. Shortly thereafter, BROWN arrived to deliver the requested amount of crack cocaine that was then sold to the CS. Your affiant confirmed through historical call detail records that the middleman did in fact contact the phone associated with BROWN.

11. On another date in November of 2019, this affiant again utilized a CS to conduct another controlled drug transaction from Raymond BROWN. The CS again was required to go through a middleman. Similar preparation was used regarding searching the CS and the CS's vehicle, with negative results, and outfitting the CS with law enforcement buy money and a/v equipment. Once the CS met with the middleman, the middleman contacted BROWN by phone to request he deliver cocaine. BROWN agreed and arrived shortly thereafter. On this occasion, BROWN delivered and sold a state-level trafficking amount of cocaine directly to the CS.

12. Within the last three weeks, your affiant again utilized a CS to conduct a controlled drug transaction from BROWN. The CS was prepped for this investigation similar to all previous controlled drug transactions. Your affiant knew, pursuant to a state court order allowing live cell-site location information on the phone associated with BROWN, that BROWN was not in Raleigh but in a neighboring town. The CS again met with the same middleman and requested an amount of cocaine. The middleman advised that he would have to call his source of supply. Electronic surveillance showed that the middleman's very next phone call was to BROWN. BROWN was heard over speakerphone instructing the

5

middleman to proceed to a location at which to meet. Once BROWN arrived, the middleman met with BROWN and obtained the cocaine, which was then immediately sold to the CS.

13. On March 4, 2020, the Honorable Judge James Gates, United States Magistrate Judge, authorized a Federal Arrest Warrant via Criminal Complaint for Raymond BROWN aka "031". (See: 5:20-mj-1233-JG). BROWN was charged with Possession with Intent to Distribute Cocaine. On the same date, the Honorable Judge James Gates, United States Magistrate Judge, authorized a Federal Search and Seizure Warrant for Raymond BROWN, his residence, and vehicle. Among those items to be seized were cell phones and photos, records, documents that might be stored on a computer.

14. On March 5, 2020, the Raleigh Police Department arrested BROWN shortly after leaving his residence located at 2272 Fox Ridge Manor Road in Raleigh, North Carolina. At the time of BROWN's arrest, BROWN was in possession of an IPhone, Model unknown at this time, and Serial Number unknown at this time due to that information being stored within this phones data.

15. I am requesting a search warrant be granted to search the cell phone listed in the 'Items to be searched' which has been recovered during the course of this investigation. The cellphone listed was seized from Raymond BROWN. My training and experience has shown that people use personal electronic devices, to include cellular telephones, for many aspects of their daily lives. Numerous past investigations have revealed evidence of crimes on electronic devices to include

6

Case 5:20-mj-01250-JG   Document 1   Filed 03/06/20   Page 7 of 17

evidence of motive, method and intent to commit specific crimes via photographs, text messages, email messages, websites and other digital files stored on these devices.

**TECHNICAL TERMS**

16. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless

7


Case 5:20-mj-01250-JG Document 1 Filed 03/06/20 Page 8 of 17

telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17. Based on my training, experience, and research, I know that the listed device has capabilities that allow them to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and/or PDA.** In my training and experience, examining data stored on devices of this type can uncover,

among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

> d. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.
>
> e. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time

9

before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

f. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

g. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

10

h. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

i. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

j. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

k. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

l. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I

submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the devices as described in Attachment B to seek the items described in Attachment A.

Respectfully submitted,

Detective Steve Kopcsak
Raleigh Police Department
FBI Task Force

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant, Steve Kopcsak, appeared before me via reliable electronic means, was placed under oath and attested to the contents of this affidavit.

Date: 6 March 2020

James E Gates
United States Magistrate Judge
Eastern District of North Carolina

13

## ATTACHMENT A

This warrant authorizes the forensic examination and evaluation of the listed devices, for the purpose of locating, identifying and recovering electronically stored information, as described more fully in Attachment B, incorporated herein.

## ATTACHMENT B

1.    IPhone, Model unknown, Serial Number unknown, taken from Raymond BROWN's possession on March 5, 2020, hereinafter the "Device 1". This Device is currently located in the custody of the Raleigh Police Department.



### Information and Records Sought:

1.    All records on the listed devices described in Attachment A that relate to a Distribution of cocaine in violation of 21 **USC § 841(a)(1),** including:

    a. lists of customers, suppliers, depositors, or criminal associates, and related identifying information;

    b. types, amounts, and prices of firearms purchased, as well as dates, places, and amounts of specific transactions;

c. any information related to sources/recipients of firearms (including names, addresses, phone numbers, or any other identifying information);

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;